**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------- X
MICHAEL MULLAUGH as Personal :
Representative of the :
ESTATE OF MICHAEL A. LORIG, :
　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　Plaintiff, :
　　　　　　　　　　　　　　　　　　　　　:
　　-against- :
　　　　　　　　　　　　　　　　　　　　　: No. 18 Civ. 2908 (JFK)
J.P. MORGAN CHASE & CO., : **OPINION & ORDER**
J.P. MORGAN CHASE BANK, N.A., :
J.P. MORGAN SECURITIES LLC, and :
MICHAEL S. LEE, :
　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　Defendants. :
　　　　　　　　　　　　　　　　　　　　　:
------------------------------------- X

APPEARANCES

FOR PLAINTIFF MICHAEL MULLAUGH
　　Keith Martin Fleischman
　　THE FLEISCHMAN LAW FIRM

FOR DEFENDANTS J.P. MORGAN CHASE & CO., J.P. MORGAN CHASE BANK,
N.A., J.P. MORGAN SECURITIES LLC, and MICHAEL S. LEE
　　Lloyd Blades Chinn
　　Daryl Gregory Leon
　　PROSKAUER ROSE LLP

**JOHN F. KEENAN, United States District Judge:**

　　Before the Court is a motion by Defendants J.P. Morgan Chase & Co. ("JPMCC"), J.P. Morgan Chase Bank N.A. ("JPMCB"), J.P. Morgan Securities LLC ("JPMS"), and Michael S. Lee ("Lee") (collectively, the "Defendants") to dismiss Plaintiff Michael Mullaugh's complaint. For the reasons below, Defendants' motion is granted.

1

## I. Background

### A. Factual Background

The Court takes the following facts and allegations from the complaint which, for the purposes of this motion, must be deemed true.

Plaintiff is the personal representative of the estate of decedent Michael A. Lorig ("Lorig") and brings this action in that capacity. (Compl. ¶ 21.) Defendant JPMCC is a Delaware corporation. (Id. ¶ 24.) Defendant JPMCB—a wholly-owned subsidiary of JPMCC—is a nationally-chartered bank organized under the laws of Ohio. (Id. ¶ 25.) Defendant JPMS—a wholly-owned subsidiary of JPMorgan—is a Delaware limited liability company. (Id. ¶ 28.) All three entities are headquartered in New York, New York (Id. ¶¶ 24-25, 28) and the complaint refers to them collectively—and apparently interchangeably—as "JPMorgan." (Id. ¶ 3.) Defendant Lee "is a Managing Director of JPMCC and Regional Director of JPMS" and, on information and belief, "resides in New York." (Id. ¶ 31.)

#### 1. Lorig's Disability Leaves & Death

In 2008, Lorig joined JPMorgan as a Senior Managing Director following its acquisition of and merger with Lorig's previous employer. (Id. ¶¶ 3, 44, 62.) At all relevant times, Defendant Lee was Lorig's direct supervisor. (Id. ¶ 66.)

Lorig "suffered from clinically diagnosed, medically treated anxiety and depression" which caused him to take two six-month medical leaves, in 1989 and 2001, for treatment and recovery. (Id. ¶¶ 68-69.)  On both occasions, Lorig "overcame his disability, and continued his" career. (Id. ¶ 70.)

In late February 2014, Lorig "suffered another bout of severe depression" and, on February 25, 2014, started a short-term disability leave for treatment. (Id. ¶¶ 72-73.)  JPMorgan granted his leave and all Defendants were "fully aware" of Lorig's health issues. (Id. ¶¶ 74-75, 78.)  At all relevant times, "Lorig consistently informed JPMorgan" that he "fully intended to return to his position." (Id. ¶ 76.)

When Lorig started his leave, Lee unilaterally split the commissions Lorig received on his book of business, leaving Lorig with a twenty percent share while a younger broker assigned to manage Lorig's cases in his absence received eighty percent. (Id. ¶¶ 89-91.)

In June 2014, Lee suggested to Lorig that JPMorgan would forgive the debt on a loan Lorig had taken from JPMorgan if Lorig (1) retired rather than take long-term disability leave and (2) transfer his business to a younger JPMorgan employee. (Id. ¶¶ 125-27.)  Lorig declined the proposal, advising that he could not fairly evaluate the proposal, needed the longer leave

3

to treat his illness, and planned to return to work once healthy. (Id. ¶ 128.)

On August 15, 2014, as Lorig's health had not materially improved, he commenced long-term disability leave. (Id. ¶¶ 129, 136.) Prudential Insurance ("Prudential")—who had taken responsibility for Lorig's case at JPMorgan's request—granted and paid for this leave. (Id. ¶¶ 137-38.) Lorig made clear to Defendants that "it was his full intention to treat his disability and return to work" and Defendants knew Lorig's leave was due to his continuing mental health issues. (Id. ¶¶ 139-40.)

After Lorig commenced his long-term leave, Lee unilaterally cancelled Lorig's commission splits, permanently transferred his accounts to other brokers, and informed Lorig that JPMorgan would terminate his professional licenses. (Id. ¶¶ 93-94.) In August 2014, despite knowing Lorig's condition, Lee insisted that Lorig meet him and again pressured him to voluntarily retire, stating that—in exchange—JPMorgan would forgive his loan balance and fully vest his restricted stock units. (Id. ¶¶ 142-46.) This proposed retirement deal would "have eliminated the standard retirement packages JPMorgan offered to employees similarly situated to" Lorig, including the ability to transfer their book of business to a JPMorgan broker of their choice and, in exchange, receive between thirty and sixty percent trailing commissions for three years. (Id. ¶ 149.) Lorig did not accept

4

this proposal and again told Lee that his mental condition prevented him from being able to consider any such proposals at that time. (Id. ¶¶ 150-52.)

On July 26, 2016, nearly two years after starting his long-term leave, Lorig informed Defendant Lee and other JPMorgan employees "that he was being released from disability . . . with a clearance to return to work when his disability ended on August 25, 2016." (Id. ¶ 208.) On August 8, 2016, one of Lorig's doctors faxed JPMorgan a letter stating that Lorig "has made significant improvement and in my opinion is now able to return to work with no restrictions." (Id. ¶¶ 218-20.)

On an August 8, 2016 phone call, however, JPMorgan employee Jen Smith ("Smith") informed Lorig that he could not return to JPMorgan because there was no "business for him to return to [and] his employment had been terminated following the conclusion" of what Smith characterized as Lorig's Family and Medical Leave Act ("FMLA") leave. (Id. ¶¶ 215, 222.) Following emails in which Lorig disputed these characterizations and voiced a desire to return to work, Smith conceded that until an agreement between them could be reached, Lorig would officially remain a JPMorgan employee. (Id. ¶¶ 236-39.) Smith also advised Lorig that his professional licenses had been terminated in September 2014, though JPMorgan "inexplicably failed" to provide Lorig with information on which licenses had been terminated and

5

when until November 8, 2016. (Id. ¶¶ 223-24, 266.) JPMorgan also refused Lorig's request to reactivate his licenses while his return to work was being discussed—which would have allowed him to avoid a two-year suspension—or even amend their filings terminating his licenses to reflect that they were simply inactive. (Id. ¶¶ 268, 271, 276.)

On January 22, 2017, "[d]espondent over the prospect of watching his career prospects and personal self-worth evaporate, and facing the daunting task of finding work as a 66-year old with a history of mental illness and expired professional licenses," Lorig took his own life. (Id. ¶ 284.)

### 2. Defendants' Knowledge & Actions

The complaint alleges that on five occasions ending on July 20, 2014 Lorig's medical team sent JPMorgan updates on his health, all of which indicated Lorig had suicidal thoughts. (Id. ¶¶ 83-85, 106-109, 110-112, 115, 117.) Plaintiff further alleges that on July 26, 2014, August 10, 2014, June 20, 2015, and February 10, 2015, Lorig's medical professionals sent Prudential, which provided JPMorgan's disability management services, updates on Lorig's health, with the first two reports indicating Lorig had suicidal thoughts. (Id. ¶¶ 118, 130-132, 204.) In any event, Plaintiff pleads that, at "all relevant times, the Defendants knew, deliberately ignored, or were reckless or negligent in not knowing that [Lorig] suffered from

6

a disability which specifically caused him to frequently engage in suicidal ideation." (Id. ¶ 293.)

Plaintiff further alleges that Defendants undertook an "intentional, systematic, policy, pattern and/or practice of intentionally discriminating against" Lorig based on his disability and age. (Id. ¶ 300.) Defendants, among other actions, "intentionally, knowingly, recklessly, or negligently" (1) "subjected [Lorig] to differing working conditions and compensation;" (2) "unilaterally permanently transferred [Lorig's] accounts to other of the Defendants' younger employees;" (3) "pressured [Lorig] to voluntarily retire, and insisted that any separation be treated as a 'voluntarily retirement' rather than a reduction-in-force;" (4) "pressured [Lorig] to retire notwithstanding his stated intention to return to work once he had overcome his illness;" (5) "pressured [Lorig] to not commence long-term disability leave, and thereafter fail[ed] to provide him with statutorily-mandated notice under the FMLA;" (6) "deliberately and fully terminated [Lorig's] securities licenses with full knowledge that [Lorig's] disability prevented him from timely re-associating his licenses with a new firm;" (7) "failed to provide clear notice that JPMorgan had filed a Form U5 terminating [Lorig's] professional licenses;" (8) "inaccurately described the reasons for [Lorig's] absence on the Form U5;" (9) "refused to re-activate [Lorig's]

7

professional licenses or take any steps to do so in the face of the licenses' imminent expiry;" (10) "deliberately and spitefully refused to take any steps enabling [Lorig] to re-activate his licenses once [Lorig] announced his intention to return to work;" (11) "terminated [Lorig's] employment;" and (12) "failed and refused to take reasonable and adequate steps to prevent and correct instances of discrimination." (Id.) These actions and Defendants' "clear notice of the harms that threatened to befall [Lorig] if his job and professional licenses were terminated" rendered "it eminently foreseeable that he would take his own life." (Id. ¶ 300-01.) Accordingly, Plaintiff pleads that the Defendants' acts or omissions were a proximate cause of Lorig's suicide. (Id. ¶ 303.)

### B. Procedural Background

On April 2, 2018, Plaintiff filed this complaint alleging a single claim for wrongful death against all Defendants. This motion to dismiss followed.

## II. Legal Standard

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The Court's charge in ruling on a Rule 12(b)(6) motion

8

"is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y., 375 F.3d 168, 176 (2d Cir. 2004) (quoting Geisler v. Petrocelli, 616 F.2d 636, 639 (2d Cir. 1980)). The Court must construe the complaint in the light most favorable to the plaintiff, "taking its factual allegations to be true and drawing all reasonable inferences in the plaintiff's favor." Harris v. Mills, 572 F.3d 66, 71 (2d Cir. 2009). The Court, however, is not required to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." Iqbal, 556 U.S. at 678. A complaint that offers such "labels and conclusions" or naked assertions without "further factual enhancement" will not survive a motion to dismiss. Id. (citing Twombly, 550 U.S. at 555, 557).

### III. Discussion

"Under New York law, to recover damages for wrongful death, a plaintiff must prove: (1) the death of a human being; (2) a 'wrongful act, neglect or default of the defendant' that caused the decedent's death; (3) the survival of distributees who suffered pecuniary loss by reason of the decedent's death; and (4) the appointment of a personal representative of the decedent." Pub. Adm'r of Queens Cnty. ex rel. Estate & Beneficiaries of Guzman v. City of New York, No 06 Civ. 7099

9

(LBS), 2009 WL 498976, at *12 (S.D.N.Y. Feb. 24, 2009) (citing Chong v. New York City Transit Auth., 441 N.Y.S.2d 24, 25-26 (2d Dep't 1981)).[1]

Defendants argue that the complaint fails to allege a claim on which relief can be granted as (1) Plaintiff has failed to allege Defendants' actions proximately caused Lorig's suicide and (2) Plaintiff's claim is barred by the New York Workers' Compensation Law. (Mem. of L. in Supp. of Defs.' Mot. to Dismiss at 5-9, ECF No. 16 (filed Aug. 24, 2018)).

**A. Proximate Cause**

Tragically, the courts of New York and this circuit have all too often been called upon to consider the circumstances in which a defendant's actions could be considered the proximate cause of an individual's suicide. As New York courts recognize, "it is rather obvious[] that there never can be a sole cause for suicide." Case v. Anderson, No. 16 Civ. 983 (NSR), 2017 WL 3701863, at *27 (S.D.N.Y. Aug. 25, 2017) (quoting Fuller v. Preis, 35 N.Y.2d 425, 433 (1974)). While a defendant may be "held liable for the suicide of persons who, as the result of their negligence, suffers mental disturbance destroying their

---

[1] The complaint does not state under which law this wrongful death claim arises, but—as both parties' briefs extensively cite New York law to support their positions—the Court assumes New York law governs this dispute. See Federated Retail Holdings, Inc. v. Sanidown, Inc., No. 06 Civ. 6119 (LTS)(THK), 2009 WL 2394528, at *3 n.9 (S.D.N.Y. Aug. 5, 2009).

will to survive," the suicide must be "a foreseeable risk associated with the [defendant's] alleged wrongful acts." D'Addezio v. Agway Petroleum Corp., 186 A.D.2d 929, 931 (3d Dep't 1992) (quoting Fuller, 35 N.Y.2d at 428; Wells v. St. Luke's Mem'l Hosp. Ctr., 129 A.D.2d 952, 953 (3d Dep't 1987)). While "proximate causation generally remains an issue of fact for the jury" (Am. Tissue, Inc. v. Donaldson, Lufkin & Jenrette Sec. Corp., 351 F. Supp. 2d 79, 91 (S.D.N.Y. 2004)), New York courts and the courts of this circuit have recognized that "there may be and undoubtedly have been cases where the causal nexus becomes too tenuous to permit a jury to 'speculate' as to the proximate cause of [a] suicide." Fuller, 35 N.Y.2d at 433; see also Reinard v. Harsco Corp., No. 05 Civ. 738S (WMS), 2006 WL 2795639, at *5-6 (W.D.N.Y. Sept. 26, 2006) (holding that even assuming that the defendant employer discharged employee because of age discrimination, employee's suicide the day after his termination was not a reasonably foreseeable consequence); Mroz v. City of Tonawanda, 999 F. Supp. 436, 458-61 (W.D.N.Y. 1998) (finding no causal link between an alleged failure to protect against a minor's suicide where police arrested him but him released less than an hour later); Watkins v. Labiak, 282 A.D.2d 601, 602 (2d Dep't 2011) (holding that suicide was not a reasonably foreseeable result of medical malpractice during back surgery); Valkenburgh v. Robinson, 225 A.D.2d 839, 840-41 (3d

Dep't 1996) (police officer's alleged negligence in allowing his wife access to his service weapon was not the proximate cause of the wife's death as her "suicidal act" was an intentional intervening action that was not a reasonably foreseeable result); D'Addezio, 186 A.D.2d at 930-32 (holding that defendant employer's decision to terminate decedent's employment because of a violation in company policy was too attenuated to be the proximate cause of decedent's suicide).

Here, Plaintiff specifies twelve different acts or omissions that he alleges caused Lorig's suicide by destroying his career prospects and self-worth and making it difficult for him to find new employment. (Compl. ¶¶ 284, 300, 303.) It is clear from the complaint that, on July 26, 2016—when Lorig first made JPMorgan aware of his imminent medical release from disability—Lorig was under the impression he could simply return to his old position at JPMorgan and was unaware his licenses had lapsed in a way that would complicate a future job hunt. (Id. ¶¶ 208-211, 223-224.) Indeed, Lorig was not made aware that JPMorgan officially opposed his return and the complications with his licenses until his August 8, 2016 conversation with Smith, the same day that JPMorgan received confirmation from Lorig's doctors clearing him "to return to work with no restrictions." (Id. ¶¶ 215, 220.) Accordingly, only the actions Defendants took after August 8, 2016 can be said to have caused

12

Lorig's suicide under Plaintiff's own theory. Further, by that time, even granting the Plaintiff every favorable reasonable inference, it had been nearly two years since Lorig's medical team had last advised JPMorgan that Lorig was suicidal. (Id. ¶¶ 130-32 (alleging that Prudential received its last report stating that Lorig was suicidal on August 10, 2014).) Given these circumstances, it was not reasonably foreseeable that Defendants' actions would result in Lorig's suicide. As such, these actions were "simply too attenuated to be the proximate cause." D'Addezio, 186 A.D.2d at 931 (quoting Wells, 129 A.D.2d at 954.) Plaintiff has thus failed to sufficiently plead the causal element of a wrongful death claim and that claim must be dismissed.

### B. New York Workers' Compensation Law

As the Court has found that Plaintiff's complaint can be dismissed on the above grounds, there is no need for it to consider Defendants' alternate grounds for dismissal.

### IV. Leave to Amend

Although Rule 15 of the Federal Rules of Civil Procedure instructs courts to "freely give leave" to amend "when justice so requires," Fed. R. Civ. P. 15(a)(2), the Court cannot imagine a set of circumstances that would allow Plaintiff to adequately plead the causal element of a wrongful death claim in this case. Accordingly, this complaint is dismissed with prejudice.

## Conclusion

For the reasons stated above, Defendants' motion to dismiss Plaintiff's complaint is GRANTED with prejudice.

The Clerk of Court is respectfully directed to terminate the motion docketed at ECF No. 15 and close this case.

**SO ORDERED.**

Dated: New York, New York
February 26, 2019

John F. Keenan
United States District Judge